UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TONY COTLER, | ) | 1:06cv0949 DLB |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## BACKGROUND

Plaintiff Tony Cotler ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his application for supplemental security income on May 30, 2003. He alleged that his disability began approximately three years prior and was due to severe arthritis

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On March 13, 2007, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

and poor memory and understanding. AR 58-61, 69-77. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 40-43, 46-51, 52. On December 14, 2005, ALJ James Ross held a hearing. AR 203-225. ALJ Ross denied benefits on February 10, 2006. On April 7, 2006, the Appeals Council denied review. AR 7-10.

Hearing Testimony

On December 14, 2005, ALJ Ross held a hearing in Bakersfield, California. Plaintiff appeared with his attorney, Geoffrey Hayden. AR 203.

Plaintiff testified that he was 45 years old at the time of the hearing and completed the ninth grade in special education. He can read and write a little. He has a driver's license and drives a car. AR 207. Plaintiff last worked in 2002 as an in-home attendant, although he indicated that he was disabled prior to that date. AR 209. Plaintiff was in prison from 1989 through 1990, and went back for one year in 2002 for possession. AR 210. He was assigned light duty while in prison. AR 210.

Plaintiff explained that he could not work because of swelling in his ankles and legs that makes it hard to walk. AR 211. He testified that the swelling in his shoulders is worse. AR 212. His right knee is worse than his left and he sometimes has problems with his back. His hands also swell and cause him trouble in picking up things. AR 213-214. His elbows swell, too. He takes Motrin and Naproxen for pain, which sometimes cause drowsiness. AR 214. He uses a cane when his feet swell, but it was not prescribed. AR 215.

During a normal day, Plaintiff gets up and walks and does housework when his ankles are not swollen. When his ankles are swollen, he cannot do anything. His ankles usually swell about once a month, but that swelling leads to swelling in other areas, such as his arms. AR 215.

Plaintiff estimated that he could lift and carry 15 pounds without pain, walk for half a block before needing to stop, and stand for about 15 minutes before needing to sit. He does not have trouble sitting, but bending forward at the waist causes tension in his arms. He cannot kneel, stoop or squat to the ground. AR 217.

Plaintiff is married and has two children, one of which lives with him. AR 217. His daughter and wife do the housework, and his wife does most of the cooking, although he is able to cook on his good days. AR 218. He has trouble tying his shoe laces and sometimes his hands are numb. AR 218. He used to play basketball all the time. AR 220.

Plaintiff testified that he only sold drugs, and did not use them. He was never addicted to drugs or alcohol. AR 220. Other than memory and concentration problems, Plaintiff did not think he had any other psychological problems. AR 221.

Medical Record

On October 23, 2001, Plaintiff underwent mental health screening when he entered the California Department of Corrections ("CDC"). The screening was negative for significant symptoms of a serious mental disorder and Plaintiff was cleared for the general population. AR 102. A few days prior, he was evaluated as having high cognitive test scores and did not need an adaptive functioning evaluation. AR 103. Also on October 23, 2001, Plaintiff was restricted to light work duty with no running, jumping or lifting over 20 pounds, due to gouty arthritis with intermittent pain in his knees and shoulders.

In April 2002, Plaintiff complained of arthritis pain and was given medications. AR 99-100.

In July 2002, CDC progress notes indicated that Plaintiff had an "excellent response" to medication and wanted medical clearance for camp. AR 96. He was medically cleared for an unrestricted assignment. AR 97.

In October 2002, Plaintiff complained of pain in his hands, ankles and feet. Examination showed no active synovitis or limitation of range of motion. Laboratory studies were unremarkable with a negative rheumatiod factor. AR 95.

Plaintiff underwent a consultive examination on October 2, 2003, by Sarupinder Bhangoo, M.D. He complained of generalized arthritis all over his body, right elbow pain and an inability to read, concentrate and remember. Plaintiff appeared somewhat depressed and moved about the examination room slowly but without problems. His gait was antalgic but he did not use an assistive device. There was no obvious muscular atrophy or effusion of any joints and

straight leg raising was negative. Motor strength was 5/5 in all extremities, except right hand grip was good at 4/5. Dr. Bhangoo diagnosed generalized arthralgias, possible early arthritis, most likely osteoarthritis, depression of unclear etiology, stiff right shoulder with limitation of the right elbow, and poor eyesight. AR 105-108. Dr. Bhangoo explained that the clinical signs were minimal, Plaintiff did not seem to be in distress, and there was some question as to whether Plaintiff was putting in enough effort on the grip strength test as he was otherwise able to use his right hand.

Dr. Bhangoo opined that Plaintiff could stand and walk six hours in an eight hour workday and could sit for eight hours. He could lift and carry 50 pounds occasionally, 20 pounds frequently. He had no postural limitations but seemed to have some limitation of the right shoulder and elbow, although effort may be a big factor in the grip weakness. Testing suggested that Plaintiff's mental abilities were within normal limits. Dr. Bhangoo also questioned Plaintiff's claim of poor eyesight. He opined that Plaintiff was at least qualified for medium exertional duty, with no limitations. AR 108-109.

October 3, 2003, x-rays of Plaintiff's lumbar spine revealed minimal degenerative changes and slight sacralization of L5 with a probable false joint on the right. AR 110.

On October 18, 2003, Plaintiff underwent a consultive psychiatric evaluation by Ina Shalts, M.D. Plaintiff reported that he had arthritis, pain in his arm, a problem with memory and could not read or work. He reported that he had been depressed for a long time because he could not get a job. He started using cocaine in 1989 or 1990 and went to prison for possession. He was clean until 2000 when he relapsed for a year, and has now been clean for two years. Plaintiff had trouble with concentration during the interview and his mood was depressed. AR 111-113.

Based on the mental status examination, Dr. Shalts diagnosed Plaintiff with depressive disorder, not otherwise specified, cocaine dependence, in remission for two years, and a learning disability. She assessed a Global Assessment of Functioning score of 50. Dr. Shalts opined that Plaintiff had difficulty with social functioning and concentration, persistence and pace. He could understand, remember and carry out simple instructions, but could have difficulty responding to coworkers, supervisors and the public. He could have difficulty responding to usual work

4

situations and responding to work on a regular basis.  Dr. Shalts believed that Plaintiff could benefit from treatment for his depression and that he should receive psychological testing for his learning disability.  AR 114.

On November 5, 2003, a State Agency physician completed a Physical Residual Functional Capacity Assessment and opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about six hours, and sit for about six hours.  He had no further limitations.  AR 125-132.

On December 9, 2003, State Agency physician Luyen T. Luu, M.D., completed a Mental Residual Functional Evaluation Assessment.  Dr. Luu opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions.  Dr. Luu further opined that Plaintiff had the ability to carry out simple instructions, to maintain socially appropriate behavior and to respond appropriately to changes in work setting.  AR 115-117.

Plaintiff saw psychologist John K. Zhang for a consultive examination on January 7, 2004.  Plaintiff complained that he had arthritis and doesn't read well.  He reported that he began drinking at age 14 and admitted drinking the day before the evaluation.  He reported that he had not used cocaine since 2001.  Plaintiff denied any history of psychiatric hospitalizations or mental health problems.  Plaintiff's mood was mildly depressed but his memory and concentration appeared to be within the normal range.  Dr. Zhang diagnosed alcohol dependence and mood disorder, not otherwise specified.  As a result of these impairments, Plaintiff's cognition, memory and concentration were mild to moderately impaired.  He would be expected to experience some difficulties maintaining adequate social and occupational functioning in common employment settings.  Dr. Zhang recommended substance abuse treatment and a psychiatric evaluation and psychotherapy.  Given his addiction problems, he would need assistance managing his funds if he received benefits.  AR 152-156.

On January 30, 2004, Dr. Luu re-evaluated the medical records and found that Plaintiff had an insufficient ability to maintain socially appropriate behavior or respond appropriately to changes in work setting.  AR 122.  Dr. Luu also indicated that Plaintiff had moderate difficulties in maintaining social functioning, mild restrictions in daily living, and mild difficulties in

maintaining concentration, persistence and pace.  AR 143.  Despite this, she found that he could still perform simple, repetitive tasks.  AR 149.

On February 17, 2004, Plaintiff saw Ajitpal S. Tiwana, M.D., for complaints of a swollen right knee and ankle and pain.  He also complained of right shoulder pain but indicated that his medication helped.  AR 157.  An x-ray of his right knee showed effusion with spurring but no fracture.  AR 161.

On June 3, 2004, State Agency psychiatrist Marina C. Vea, M.D., completed a Psychiatric Review Technique form.  She opined that Plaintiff had a learning disorder and had mild restrictions of daily living, mild difficulties in maintaining concentration, persistence and pace, and moderate difficulties in maintaining social functioning.  AR 162-175.  In a Mental Residual Functional Capacity Assessment, Dr. Vea opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions.  She also opined that he was moderately limited in his ability to interact appropriately with the public.  He could understand and remember simple job instructions, sustain concentration, persistence and pace for two-hour increments, relate and interact fairly and adapt to change in work settings.  She concluded that he could do at least simple, routine, repetitive tasks.  AR 176-178.

Also on June 3, 2004, State Agency physician Anne M. Khong, M.D., completed a Physical Residual Functional Capacity Assessment and opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about six hours, and sit for about six hours.  He could occasionally climb, kneel and crouch, and could frequently balance, stoop and crawl.  He could not reach above shoulder level or perform frequent forceful gripping or grasping with his right upper extremity.  He was limited in near and far acuity.  AR 183-190.

On August 20, 2005, Plaintiff received treatment at Bakersfield Family Medical Center Urgent Care for swelling in his ankles and knees.  He was prescribed Lasix and the problem cleared up in one day.  AR 196-197.

Plaintiff returned to Urgent Care on August 28, 2005, and complained of ankle pain.  On examination, there was trace edema and mild tenderness.  X-rays showed mild degenerative

changes in his right ankle, early degenerative changes in his left ankle, and minimal degenerative changes in both feet. AR 195.

On December 13, 2005, Dr. Tiwana completed a Questionnaire and indicated that Plaintiff was precluded from performing work at any exertional level because of his severe arthritis and gout. He could sit for two hours, stand for two hours and walk for two hours in an eight hour day. He would have to lie down three times a day for one hour. Dr. Tiwana opined that Plaintiff has had these limitations since November 14, 2002. AR 199-200.

ALJ's Findings

After reviewing the medical record, the ALJ determined that Plaintiff suffered from the severe impairments of episodic gouty arthritis and a history of alcohol abuse with mild reduction in cognition and mentation. AR 16. He found that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk six hours in an eight hour workday, and sit for six hours. Plaintiff was limited to simple, repetitive tasks. AR 17. His allegations were not totally credible. AR 21. Although Plaintiff could not perform his past work, he could perform a significant range of light work. The ALJ determined that Plaintiff's limitation to simple, repetitive tasks did not compromise his capacity for light work. AR 22-23.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (episodic gouty arthritis and a history of alcohol abuse with mild reduction in cognition and mentation) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a significant range of light work. AR 22-23.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

8

Here, Plaintiff argues that the ALJ improperly evaluated the medical evidence in determining the impact of his non-exertional limitations on the occupational base.

**DISCUSSION**

Plaintiff contends that the ALJ's RFC finding was unsupported because he failed to properly assess the medical evidence. Specifically, he argues that the ALJ should have found his mental limitations to be more restrictive based on the findings of Dr. Shalts and Dr. Zhang. He further contends that the ALJ misinterpreted the findings of Dr. Vea, the State Agency physician, and that he ignored the impact of Plaintiff's visual limitations.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. It is the responsibility of the ALJ, not a claimant's physicians, to determine RFC. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. § 404.1545. In this regard, the ALJ is solely responsible for resolving conflicts in the medical record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Indeed, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Id.*

*Mental Impairment*

The evidence of Plaintiff's mental impairment consists mainly of two consultive examinations performed by Dr. Shalts and Dr. Zhang and two reviews by State Agency physicians Luu and Vea. There were no treating sources. In finding that Plaintiff was limited to simple, repetitive tasks, the ALJ concurred with Dr. Shalts, Dr. Luu and Dr. Vea. Plaintiff does not dispute this finding, but rather contends that the ALJ should have found further mental limitations based on the reports of Dr. Shalts and Dr. Zhang. For the reasons discussed below, the Court agrees with Plaintiff's argument.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v.*

*Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

As the ALJ set forth, Dr. Shalts opined that Plaintiff had difficulty with social functioning and concentration, persistence and pace. She further opined that he "could" have difficulty responding to coworkers, supervisors and the public, as well to as usual work situations. She also believed that Plaintiff "could" have difficulty with routine work settings and attending work on a regular basis. AR 114. In rejecting these limitations, the ALJ explained that Dr. Shalts "failed to be specific or explain why claimant 'could' have difficulty in these areas," noting that Plaintiff interacted "well with family members and [ ] demonstrated no difficulty interacting with the various examiners." AR 20. He also rejected Dr. Shalts' assessment because it was based solely on Plaintiff's complaints. AR 20.

Similarly, Dr. Zhang found that Plaintiff would have mild to moderate impairments in cognition, memory and concentration, and that he would have "some difficulties maintaining adequate social and occupational functioning in common employment settings." AR 155.

As consultive examiners, the opinions of Dr. Shalts and Dr. Zhang were entitled to more weight than the opinions of Dr. Luu and Dr. Vea. If contradicted, their opinions could only be rejected for "specific and legitimate" reasons. If not contradicted, their opinions could only be rejected for "clear and convincing" reasons.

Although the ALJ appears to believe otherwise, the limitations set forth by Dr. Shalts and Dr. Zhang appear to be consistent with those of the State Agency physicians, at least insofar as Plaintiff's abilities in social functioning. Dr. Luu concluded that Plaintiff had an insufficient ability to maintain socially appropriate behavior and would have moderate difficulties in maintaining social functioning. Similarly, Dr. Vea found that Plaintiff would have moderate

limitations in his ability to interact with the public and could relate and interact "fairly."[4]  AR 177-178.  Even under the "specific and legitimate" standard that would apply if their opinions are considered contradicted, though, the ALJ improperly rejected the limitations.

That a claimant can perform simple, repetitive tasks does not equate to a finding that he can function socially.  The two areas are not related and just because Plaintiff may be able to perform simple repetitive tasks does not mean that the ALJ can ignore the Plaintiff's limitations in social functioning.

The ALJ does not specifically explain why he rejects Dr. Zhang's social functioning assessment.  While he found it "reasonable that claimant might have a mild reduction in cognition and mentation as a result of alcohol abuse," the ALJ determined that Plaintiff's ability to work in the past negated any such reduction.  AR 20.  This explanation, though, does not necessarily mean that Plaintiff is not limited *currently* in social functioning.  Plaintiff's past work consists of work in the fast food industry in the late 1980s and early 1990s and part-time work as an in-home assistant.  Such positions are hardly good indicators of a person's current ability to function in a social setting.  AR 62-67, 207-208.

The ALJ rejected Dr. Shalts' opinion in part because she failed to specify or explain why Plaintiff "could" have difficulties responding to others.  AR 20.  However, given the weight that should be afforded to consultive physicians in a case where they are the only examining sources, this is not a convincing or legitimate reason.  In a case such as this, where there are no treating sources and the consultive and non-examining sources have rendered similar conclusions as to Plaintiff's social functioning, an ambiguity in the record should have been resolved with further clarification.

The ALJ further rejects Dr. Shalts' opinion because her assessment was based solely on Plaintiff's responses.  Indeed, in her report, Dr. Shalts noted that there were no records available for her review.  AR 111.  Given that the above reason for rejecting her opinion was not proper,

---

[4] As Plaintiff points out, the ALJ appears to have misread Dr. Vea's assessment of Plaintiff's abilities to interact and relate.  The ALJ states that Dr. Vea indicated that Plaintiff could relate and interact with *family,* however Dr. Vea stated that Plaintiff could "relate and interact *fairly.*"  AR 178.  Certainly, Dr. Vea's true limitation will impact the ALJ's analysis on remand.

11

the ALJ's rejection of a consultive examiner in favor of a non-examining physician cannot rest on this factor alone. In fact, Dr. Shalts specifically stated that there was no evidence of malingering or fictitious behavior. AR 113. Dr. Zhang came to a similar conclusion, finding that the results of his examination were considered "a valid and reliable indicator of the claimant's current level of psychological functioning." AR 154. The Court recognizes that an ALJ can reject a treating sources opinion when it is based on Plaintiff's discredited subjective complaints, and further recognizes that Dr. Bhangoo, who conducted a consultive physical examination, questioned Plaintiff's efforts, but given the circumstances of this case, this factor does not constitute a convincing *or* legitimate reason supported by substantial evidence.

After the rejection of the consultive sources, the ALJ was left with the State Agency physicians' opinion. As explained above, the opinions as to Plaintiff's social functioning appear consistent with the opinions of the consultive examiners, which lends more support to the argument that the consultive examiners' opinions should have been adopted and/or clarified. To the extent that the opinions can be considered contradictory, the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 2000); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

*Vision Impairment*

Finally, Plaintiff contends that the ALJ ignored Dr. Khong's finding that Plaintiff was limited in near and far visual acuity. AR 186. While Plaintiff is correct that Dr. Khong opined that Plaintiff was limited in near and far visual acuity, she further stated that Plaintiff had no specific visual complaints and that he could discriminate between moderate to large sized objects. AR 186. Although she indicated that his reading may be slowed, this would not likely impact the occupational base of jobs limited to simple, repetitive tasks. Additionally, although Dr. Bhangoo diagnosed Plaintiff with poor eyesight, he questioned Plaintiff's claim of poor eyesight and opined that Plaintiff was at least qualified for medium exertional duty, with no limitations. AR 108-109.

*Remand*

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Based on the above, the Court finds that the ALJ did not properly assess the medical opinions in analyzing Plaintiff's RFC, and in concluding that his non-exertional impairments did not significantly impact the occupational base. The Court therefore remands the action to the ALJ for further analysis, including possibly recontacting Dr. Shalts and/or utilizing a vocational expert, if necessary.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Tony Cotler and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 20, 2007**          **/s/ Dennis L. Beck**
                                       UNITED STATES MAGISTRATE JUDGE